**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MANUELITA CAMARGO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-10-CV-242-KC** |
| | § | |
| **GINO MORENA ENTERPRISES,** | § | |
| **L.L.C., and ORALIA RODRIGUEZ,** | § | |
| | § | |
| **Defendants**. | § | |

## ORDER

On this day, the Court considered Plaintiff Manuelita Camargo's ("Camargo") Amended Motion to Remand ("Motion") (Doc. No. 6) and the Defendants' Response to it (Doc. No. 7). For the reasons set forth below, the Court **DENIES** the Motion.

## I.    BACKGROUND

Camargo is a resident of El Paso, Texas.  Pl.'s Orig. Pet. 1.[1]  Defendant Gino Morena Enterprises ("GME") is a California business entity which operates a barbershop and beauty salon on the grounds of Fort Bliss.  *Id*. at 1-2.  Defendant Oralia Rodriguez ("Rodriguez") is the manager of that barbershop and possibly a resident of El Paso, Texas.  *Id.* at 2.  GME employed Camargo as a hairdresser at its Fort Bliss barbershop from 1999 through 2009, at which point her employment was terminated.  *Id.*

Believing that her termination was based on unlawful discrimination, Camargo filed an

---

[1]        Plaintiff's Original Petition has been filed as "Exhibit A" to Defendants' Notice of Removal (Doc. No. 1).  All page references are to its internal pagination.

administrative complaint of employment discrimination on February 17, 2010.  *Id.*  She then filed

the instant suit in state court on May 20, 2010, seeking recovery under the anti-discrimination

provisions of the Texas Commission on Human Rights Act ("TCHRA").[2]  *Id.* at 1-2.  Defendants

removed the case to this Court on June 28, 2010, on the basis of federal enclave jurisdiction,

which is a type of federal question jurisdiction.  *See* Notice of Removal ¶¶ 3-5.  Defendants also

assert that diversity jurisdiction provides an independent basis for subject matter jurisdiction.  *Id.*

¶¶ 6-7.  Camargo contests the availability and propriety of these grounds for jurisdiction.  *See*

*generally* Mot.

## II.     DISCUSSION

### A.     Standard

        A defendant may remove an action from state court to federal court if the action is one

over which the federal court possesses subject matter jurisdiction.  *See* 28 U.S.C. § 1441(a).  The

removing party must show that federal jurisdiction exists and that removal is proper.  *See*

*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  In evaluating

jurisdiction, "any ambiguities are construed against removal because the removal statute should

be strictly construed in favor of remand."  *Id.*  The district court is required to remand a case to

state court if, at any time before final judgment, it determines that it lacks subject matter

jurisdiction over the case.  28 U.S.C. § 1447(c).  Where the jurisdiction of the court is

challenged, the burden is on the party seeking to preserve the district court's removal jurisdiction.

*Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997)*; Sid Richardson Carbon &*

---

        [2]              The relevant provisions are codified at TEX. LAB. CODE §§
                21.051, 21.055, 21.056 and 21.106.

*Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).  "Under the well

pleaded complaint rule . . . a movant may not remove a case to federal court unless the plaintiff's

complaint establishes that the cause of action arises under federal law.  Courts will, however,

typically look beyond the face of the complaint to determine whether removal is proper."  *Bear*

*Stearns*, 128 F.3d at 922; *see also Blahnik v. BASF Corp.*, No. 06-CV-410, 2006 WL 2850113, at

*4 (S.D. Tex. Oct. 3, 2006) (using interrogatory responses entered into evidence, as well as the

pleadings, to settle the question of the availability of federal enclave jurisdiction).

### B.        Federal Enclave Jurisdiction

Defendants assert that federal enclave jurisdiction provides subject matter jurisdiction in

this case.  Notice of Removal ¶¶ 3-5.  Federal enclave jurisdiction is a subspecies of federal

question jurisdiction, which is a form of subject matter jurisdiction vested in federal district

courts by 28 U.S.C. § 1331.  *See Blahnik*, 2006 WL 2850113, at *3.  Because Congress has

exclusive legislative jurisdiction over federal enclaves – pieces of territory carved out of states

for federal use and control – courts have reasoned that federal courts must also have subject

matter jurisdiction over controversies that arise on such enclaves.  *See* U.S. CONST., art. I, § 8, cl.

17 (permitting the federal government to set up enclaves within states if the relevant state

legislature grants consent); *Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1953) (finding

subject matter jurisdiction over controversies that arise on federal enclaves); *Blahnik*, 2006 WL

2850113, at *3.  Thus, federal courts have at least concurrent original jurisdiction over tort

claims that arise on federal enclaves.  *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247,

1250 (9th Cir. 2006); *see also Mater*, 200 F.2d at 123-24 (observing that the Supreme Court has

permitted state court jurisdiction over tort claims arising out of events taking place on federal

enclaves, but that federal courts also have jurisdiction over such cases[3]).  Federal enclave

jurisdiction does not require that any party to the suit be a federal employee, officer, or affiliate,

or that substantive federal laws be at issue in the case; Camargo's arguments to the contrary are

erroneous.  *Compare* Mot. ¶¶ 11, 13, 17-19 (arguing that some further federal nexus is required

in order to invoke federal enclave jurisdiction) *with Mater*, 200 F.2d at 124-25 (holding that

federal jurisdiction exists over tort claims arising on federal enclaves because it would be

"incongruous to hold that although the United States has exclusive sovereignty in the area here

involved, its courts are without power to adjudicate controversies arising there," without making

reference to the federal status of the parties or the substantive claim at issue).

For federal enclave jurisdiction to apply, in employment discrimination cases, the adverse

employment decision must have been made on federal territory, because the locus of decision-

making is where such a tort arises.  *See Lawler v. Miratek, Corp.*, No. EP-09-CV-252-KC, 2010

WL 743925, at *3-4 (W.D. Tex. Mar. 2, 2010) (analyzing a TCHRA claim made by a civilian

employee on Fort Bliss).  The fact that the employee's day-to-day job site is on a federal enclave,

alone, is not sufficient for these purposes; rather, the location where management made the

illegal decision controls.  *Id.*  In light of this standard, the Court notes that there is very little

material in the pleadings that is relevant to the question of where the decision was made.

---

[3]        Defendants' argument that federal enclave jurisdiction vests
federal courts with *exclusive* jurisdiction to hear such cases is
overbroad in light of the Fifth Circuit's holding in *Mater*.  The
case Defendants cite for this proposition, moreover, is
inapposite.  That case, *United States v. Texas*, 695 F.2d 136,
141 (5th Cir. 1983), holds that the federal government has
exclusive *legislative* authority over federal enclaves; it does
not hold that federal tribunals have exclusive *judicial* authority
over controversies which arise on such enclaves.  *See* Notice
of Removal ¶ 3 (citing *United States v. Texas*).

Camargo avers in her pleadings that she "was told by Chere Jackson [the area supervisor for GME] that she was being terminated because she did not have sufficient transportation and she did not speak English."  Pl.'s Orig. Pet. 2.  Camargo also avers that Rodriguez, not Jackson, is the manager of the Fort Bliss barber shop.  *Id.*  Defendants argue that it is undisputed that Camargo's job site was on Fort Bliss, a federal enclave, and that she "does not affirmatively deny that her claims arose from occurrences on Fort Bliss."  Resp. 6; *see also* Notice of Removal ¶ 5 (averring that Camargo's job site was at 1511 Marshall Street, Fort Bliss, Texas).

Camargo's factual averments in the pleadings are insufficient to establish, with any degree of certainty, the location at which the adverse decision was made.  While these averments support an inference that Rodriguez, the barbershop manager, undertook her corporate duties while physically present on Fort Bliss, they also suggest that the adverse decision at issue may have been made not by Rodriguez, but by Chere Jackson ("Jackson"), who, as "area supervisor," could have been located anywhere.  Thus, Camargo's averments do not settle this question.

Defendants point this out, but they rely on it too heavily.  *See* Resp. 6.  When the removal of a case is challenged, "the burden is on the party seeking to preserve the district court's removal jurisdiction."  *Frank*, 128 F.3d at 921-22.  Thus, the fact that Camargo did not affirmatively deny that her claims arose on Fort Bliss is irrelevant – her Motion was denial enough, and in its wake Defendants must demonstrate the federal enclave jurisdiction is appropriate.  They have failed to do this.  The only factual averment that Defendants stress is an immaterial one – that Camargo's job site was on Fort Bliss.  *See* Resp. 6.  They do not adduce evidence for, or even aver, any facts showing that the adverse decision was made on Fort Bliss.  As the employer, GME is in the best position of all the parties to explain how and where

employment decisions are made, yet GME did not do so.  While Camargo's status as a civilian employee of a private company does not bar federal enclave jurisdiction in this case, GME has not carried its burden of showing that claim here actually arose on Fort Bliss.  Accordingly, the Court will not sustain removal on the basis of federal enclave jurisdiction.

### C.     Diversity Jurisdiction

Defendants argue, in the alternative, that diversity jurisdiction provides an adequate independent basis for subject matter jurisdiction.  *See* Resp. 6-7.  A federal district court has subject matter jurisdiction over a controversy sounding exclusively in state law when there is complete diversity of citizenship between each plaintiff and each defendant and the amount in controversy is greater than $75,000.  *See* 28 U.S.C. § 1332(a).  Defendants contend that any apparent defects in diversity jurisdiction, as defined above, may be overcome by the application of certain legal doctrines designed to prevent its unjust manipulation.  *See* Resp. 7-8.  The Court will analyze the two prongs of diversity jurisdiction – amount in controversy and diversity of the parties – in turn.

#### 1.     Amount in controversy

Defendants first address the amount in controversy requirement.  *See* Resp. 7.  They note that, while Camargo's pleadings do not set forth the numerical amount she is seeking to recover, these pleadings may be deemed to place at least $75,000 in controversy under the "facially apparent" standard.  *Id.*; *see also* Notice of Removal ¶ 7.  This is because she seeks recovery for wrongful termination under TCHRA and requests back pay, front pay, compensatory damages, punitive damages, and attorneys' fees, without affirmatively limiting her recovery to less than $75,000 – suggesting that she is seeking to maximize her recovery and that such maximum

recovery could easily exceed the jurisdictional limit. *Id.* Indeed, this Court has frequently held

that such circumstances make it facially apparent that the amount in controversy exceeds

$75,000. *See Muniz v. El Paso Marriott*, No. EP-09-CV-274-KC, 2009 WL 4878619, at *5

(W.D. Tex. Dec. 8, 2009); *see also Salomon v. Wells Fargo Bank*, No. EP-10-CV-106-KC, 2010

WL 2545593, at *3-4 (W.D. Tex. June 21, 2010). As Defendants have shown that Camargo's

pleadings are legally sufficient to satisfy the amount in controversy requirement, and as Camargo

has not disputed this contention, the Court has no difficulty in finding that the amount in

controversy requirement is met here. *See* Mot. ¶¶ 27-42 (disputing diversity jurisdiction on

grounds other than the amount in controversy requirement).

### 2. Diversity of the parties and fraudulent joinder

Defendants argue that Camargo's inclusion of Rodriguez in this suit amounts to

fraudulent or improper joinder and that, if Rodriguez is disregarded, there is complete diversity

of citizenship between the properly joined parties. *See* Resp. 8. "Improper joinder" or

"fraudulent joinder" refers to situations in which the plaintiff attempts to defeat diversity

jurisdiction by naming, as a co-defendant, a party of non-diverse citizenship who should not

actually be named in the suit. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004). To

establish improper joinder, the removing party must prove either: (1) actual fraud in the pleading

of jurisdictional facts; or (2) that there is no possibility that the plaintiff could establish a cause of

action against the in-state defendant. *Boone v. Citigroup, Inc.*, 416 F.3d 382, 389 (5th Cir.

2005); *Hart v. Bayer Corp.*, 199 F.3d 239, 246-47 (5th Cir. 2000); *Rodriguez v. Sabatino*, 120

F.3d 589, 591 (5th Cir. 1997); *see also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th

Cir. 1981) (noting that the burden of proving fraudulent joinder is on the removing party).

Under the second method of proving improper joinder, the defendant must demonstrate that there is no reasonable basis for a district court to predict that the plaintiff might recover. Indeed, "[t]he burden of persuasion placed upon those who cry 'fraudulent joinder' is . . . a heavy one." *B., Inc.*, 663 F.2d at 549. But that burden is not an impossible one, as "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 (internal citations omitted). The task of a court is not to determine, at this early stage, whether the plaintiff will actually or will probably prevail on the merits of the claim. *Rodriguez*, 120 F.3d at 591. Rather, a court looks only for a *possibility* that the plaintiff may prevail. *Id.* While this is analysis is generally similar to that undertaken in a Rule 12(b)(6) motion, in that a court usually does not need to look beyond the pleadings to decide the matter, in appropriate cases a court may "pierce the pleadings" and conduct a summary-judgment-like inquiry to settle the question. *Smallwood*, 385 F.3d at 573. Finally, a finding of improper joinder warrants both the denial of any motion to remand the suit to state court, and may justify the dismissal of the improperly joined defendant from the action. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999).

The Court first observes that the citizenship of Rodriguez is not evident on the record. Camargo does not aver anything on this point in her initial pleadings. *See* Pl.'s Orig. Pet. 1 (stating that Rodriguez may be served with process on Fort Bliss, but stating nothing concerning her citizenship). However, as the removing party carries the burden of showing that jurisdiction is proper, *Frank*, 128 F.3d at 921-22, the Court cannot simply rest the matter on Camargo's silence. Rather, the Court notes that Defendants do not affirmatively meet this burden by claiming or demonstrating that Rodriguez is of non-Texas citizenship. *See* Notice of Removal

-8-

¶ 6; *see also* Resp. 8.  Instead, all parties seem to proceed on the unspoken assumption that Rodriguez is indeed a Texas citizen, and that diversity jurisdiction is proper only if her presence is disregarded.  *See* Mot. ¶ 28; *see also* Resp. 8.  Accordingly, the Court will proceed on that basis, too.

As noted above, the key inquiry is whether, under the pleadings before a court, there is at least a possibility of the plaintiff succeeding against the purportedly fraudulently-joined defendant.  *Rodriguez*, 120 F.3d at 591.  If there is at least some possibility of success, then the defendant at issue is properly joined.  *Id.*  Under the pleadings currently before this Court, Camargo has no possibility of success against Rodriguez.  This is because Camargo has pleaded only one cause of action; namely, a violation of the anti-discrimination provisions of the TCHRA.  *See* Pl.'s Orig. Pet. 1-2.  State court precedent makes it abundantly clear that this statute does not provide for a personal recovery against a supervisor in cases of discriminatory discharge; it only provides for recovery against the employer, which, in this case, is GME.  *See Jenkins v. Guardian Indus.Corp.*, 16 S.W.3d 431, 439 (Tex. Ct. App. 2000); *see also DeMoranville v. Specialty Retailers, Inc.*, 909 S.W.2d 90, 94 (Tex. Ct. App. 1995), *rev'd on other grounds*, 933 S.W.2d 490 (Tex. 1996).  The extent to which Rodriguez was personally involved in any discriminatory schemes is immaterial, as is the prospect that discovery might uncover evidence on this point.  Under the facts and law that Camargo has invoked in her pleadings,[4] there is no possibility of recovery against Rodriguez.  Accordingly, Rodriguez is

---

[4]        The mere possibility that Camargo might amend her pleadings in the future does not affect the analysis, notwithstanding her arguments to the contrary.  *See* Mot. ¶ 32 (arguing that the possibility that the pleadings will be amended militates against finding fraudulent joinder).  This is because fraudulent joinder is determined on the basis of the state court pleadings that are

fraudulently joined and the Court ignores her citizenship for the purposes of diversity jurisdiction. *See Muniz*, 2009 WL 4878619, at *3 (finding, in the context of a TCHRA hostile work environment claim, that a supervisor could not be held liable as a matter of law for intentional infliction of emotional distress for creating said hostile work environment, and that he was therefore fraudulently joined and his citizenship could be ignored for diversity purposes). Disregarding Rodriguez results in complete diversity, as Camargo is a Texas citizen and GME is a California citizen. *See* Pl.'s Orig. Pet. 1. Accordingly, diversity jurisdiction is proper, as both the amount in controversy and the complete diversity of citizenship requirements are met.

## III.   CONCLUSION

For the reasons set forth above, the Court finds that, while Defendants have failed to show facts which adequately support federal enclave jurisdiction, they have shown that diversity jurisdiction is proper in this case. Accordingly, Camargo's Motion (Doc. No. 6) is hereby **DENIED.**

**SO ORDERED.**

**SIGNED** on this 2nd day of September, 2010.

_Kathleen Cardone_

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

---

removed, not on the basis of any hypothetical future pleadings. *See Rodriguez*, 120 F.3d at 591 (holding that when examining a removed case for fraudulent joinder a court must "evaluate all the factual allegations in the plaintiff's *state court pleadings* in the light most favorable to the plaintiff") (emphasis added) (internal citations and quotation marks omitted).